[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 413.]

CINCINNATI BAR ASSOCIATION *v.* WATSON.

[Cite as *Cincinnati Bar Assn. v. Watson*, 2001-Ohio-1264.]

*Attorneys at law—Misconduct—Indefinite suspension—Neglect of several entrusted legal matters and betrayal of clients' trust.*

(No. 01-369—Submitted April 2, 2001—Decided July 18, 2001.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 99-52.

—————————

*Per Curiam.*

{¶ 1} On March 16, 2000, relator, Cincinnati Bar Association, filed an amended complaint charging respondent, Martin L. Watson IV of West Chester, Ohio, Attorney Registration No. 0062359, in eight counts with violations of the Code of Professional Responsibility arising out of the neglect of several legal matters entrusted to him. Although a Butler County deputy sheriff personally served the complaint, respondent failed to answer. Relator's motion for default was referred by the Board of Commissioners on Grievances and Discipline ("board") to Master Commissioner Harry W. White.

{¶ 2} Based on affidavits attached to the motion for default and a deposition of respondent on January 5, 2000, the master commissioner made the following findings. In February 1999, Julia A. Rowlett paid respondent a $675 retainer to file a personal bankruptcy for her. Thereafter, respondent failed to respond to any of Rowlett's inquiries or to her request for a return of the retainer, although he admitted receiving those requests.

{¶ 3} In November 1998, respondent quoted Kurt and Carol Saile a fee of $2,200 for a living trust. The Sailes provided respondent with deeds to real estate, stock certificates, bonds, certificates of title, and limited partnership documents.

Although the Sailes executed a formal trust document in May 1999, which respondent retained, they were unable thereafter to contact respondent. After they informed him that his services were terminated, respondent failed to return their documents.

**{¶ 4}** Carole Spurlock paid respondent a $1,000 retainer in two installments and in June 1999 gave him a car title, a copy of a deed, and other documents, which were to be transferred to a living trust. When Spurlock was unable to contact respondent, she stopped payment on one of the retainer checks. Respondent later met with her about revising some of the living trust documents and returned the car title but none of the other documents. Respondent then failed to meet with Spurlock or return any other documents to her.

**{¶ 5}** In addition, the master commissioner found that after respondent filed an application in May 1995 in the Hamilton County Probate Court to relieve the estate of Clarence Hall from administration, he failed to appear for a hearing. No entry to transfer the estate was filed and the court's efforts to contact respondent were unsuccessful. The court dismissed the application in October 1998 for want of administration. Respondent did not reply to the inquiries of the attorney for the estate of Nancy Hall or to relator when asked about this matter.

**{¶ 6}** In April 1998, Douglas Heckman paid respondent a fee of $1,125 to handle his father's estate, but respondent did not initiate any proceedings. Although respondent acknowledged that he received the fee, he had no recollection of the case.

**{¶ 7}** In June 1999, Christopher C. Coors paid respondent a $600 retainer and a deposit for court costs of $250 to handle a marriage dissolution on an expedited basis. A year later, respondent had still not prepared the separation agreement and did not respond to Coors's request for a return of the retainer.

**{¶ 8}** In January 1998, Dennis Leppert retained respondent to probate the estate of his father, James P. Leppert. In June 1998, May 1999, and July 1999, the

probate court issued citations to Leppert for failure to file an inventory and accounts. When confronted with the delay, respondent agreed to waive all fees and to cover expenses to the estate caused by his delay. He then took a $1,500 fee from the estate for expenses and filed an estate tax return that must be amended to correct an error. In August 1999, the state of Ohio assessed penalties with respect to the estate tax return in the amount of $3,430. Respondent had not provided Dennis Leppert with an accounting for the estate as of July 2000.

{¶ 9} The master commissioner also found that in January 1999, Juanita White paid respondent a retainer of $150 to probate the estate of her mother. At the time, White gave respondent sixteen $300 United States savings bonds and certain legal documents. Since then, she has been unable to contact respondent or obtain the return of the bonds or documents.

{¶ 10} In March 1999, D. Christine Walker paid respondent a retainer of $1,500 to initiate a divorce proceeding. Respondent did not timely respond to Walker's requests that he file a court action against her husband who was threatening her with criminal prosecution. In September 1999, respondent took possession of two checks totaling $56,000, which represented proceeds from the sale of Walker's home. Since then, respondent has failed to communicate with Walker or return her documents.

{¶ 11} Similarly, after Jerry Eaton paid respondent $1,000 to represent him in a divorce, respondent made one court appearance on Eaton's behalf. Thereafter, Eaton was unable to contact respondent, and his newly retained attorney was unable to obtain Eaton's file. No portion of the $1,000 retainer was refunded.

{¶ 12} Except for replies to the Coors and Leppert grievances, respondent did not reply to the grievances filed against him. Nor did respondent return the documents or the retainers paid to him. Although respondent did appear for a deposition, he did not produce the documents requested by relator in a subpoena

*duces tecum* and, except for returning some documents to the Sailes, he has not returned any documents to his former clients.

{¶ 13} The master commissioner concluded that respondent's conduct violated DR 2-110(A)(3) (a lawyer who withdraws from representation shall promptly refund any unearned advance fee), 6-101(A)(3) (a lawyer shall not neglect an entrusted legal matter), 9-102(B)(4) (a lawyer shall promptly deliver to the client funds or property to which the client is entitled), 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), 1-102(A)(6) (a lawyer shall not engage in conduct adversely reflecting on the lawyer's ability to practice law), and Gov.Bar R. V(4)(G) (no attorney shall neglect or refuse to assist or testify in an investigation or hearing). The master commissioner recommended that the respondent be indefinitely suspended from the practice of law.

{¶ 14} The board adopted the findings, conclusions, and recommendations of the master commissioner.

{¶ 15} We have carefully reviewed the record in this case and adopt the findings and conclusions of the board. Respondent's neglect of his clients and his betrayal of their trust warrant a substantial penalty. Respondent is hereby suspended from the practice of law in Ohio for an indefinite period. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

LUNDBERG STRATTON, J., dissents.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 16} I respectfully dissent from the penalty recommended by the board and adopted by the majority. Respondent's pattern was so egregious as to amount to more than mere neglect. His action in accepting retainers from several clients,

failing to follow through on any of the promised services, and refusing to refund retainers or client documents when terminated rise to the level of theft. His clients suffered serious harm. Respondent has not even bothered to respond to the disciplinary complaint. I believe that he has forfeited his right to practice law in Ohio. I would therefore disbar the respondent.

————————————

*Beth I. Silverman* and *Ellen Essig,* for relator.

————————————