Disciplinary Counsel *v.* Griffith.

[Cite as *Disciplinary Counsel v. Griffith,*
104 Ohio St.3d 50, 2004-Ohio-5991.]

(No. 2004–1015—Submitted August 17, 2004—Decided November 24, 2004.)

**Per Curiam.**

{¶ 1} Respondent, Curtis Griffith Jr. of New Lexington, Ohio, Attorney Registration No. 0030707, was admitted to the practice of law in Ohio in 1970. On August 15, 2003, relator, Disciplinary Counsel, charged respondent in an amended complaint with two counts of violating the Code of Professional Responsibility. Relator attempted twice to serve respondent with the complaint at the address on file with the Office of Attorney Registration, the same address at which respondent was served by certified mail with relator's original complaint and from which respondent had later written to relator about his medical condition. Both attempts to serve the amended complaint were unsuccessful, however, and relator served the amended complaint on the Clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B).

{¶ 2} Respondent did not answer the amended complaint, and relator moved for default pursuant to Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline considered the cause, and the board adopted his findings of fact, conclusions of law, and recommendation.

### Count I

{¶ 3} In June 2001, a woman retained respondent to represent her son on his appeal of a criminal conviction. On June 19, 2001, respondent accepted a $2,500 fee and received a copy of the son's trial transcript. On July 6, 2001, respondent visited his client, who was incarcerated at the Southern Ohio Correctional Facility

in Lucasville, and the client gave him copies of documents relating to the criminal case.

{¶ 4} Thereafter, respondent had little contact with either his client or the client's mother. In October of 2001 and February and April of 2002, the client sent certified letters to respondent requesting information about his case, but respondent never replied. On February 2, 2002, the client's mother e-mailed respondent asking about his progress on her son's case. On March 29, 2002, respondent's wife explained in reply that respondent had suffered health problems but was attempting to attend to his cases. On May 10, 2002, the client's mother again e-mailed respondent, and respondent replied the next day, assuring her that her son's criminal appeal was his top priority.

{¶ 5} Neither respondent's client nor the client's mother heard from respondent again. Respondent never filed anything on his client's behalf. He also did not respond to the client's request for the return of his legal fee or the documents that he had been provided.

{¶ 6} The client reported respondent's conduct to relator. On July 9, 2002, relator sent a letter of inquiry about the grievance to respondent, but that letter was returned unclaimed. On August 2, 2002, relator's investigator wrote a letter of inquiry for hand delivery, but respondent still did not reply. In the fall of 2002, relator also subpoenaed respondent three times to appear for a deposition and to produce documents. Respondent never appeared; he was hospitalized on at least one of these occasions, and relator was informed, apparently on the day of one deposition, that respondent would not be able to attend.

{¶ 7} For his failure to perform as promised and his failure to reply or appear during relator's investigation, the board found that respondent had violated DR 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law), 2–106(A) (prohibiting a lawyer from charging a clearly excessive fee), 6–101(A)(3) (preventing a lawyer from neglecting an entrusted legal matter), 7–101(A)(2) (barring a lawyer from intentionally failing to carry out a contract of employment), 7–101(A)(3) (prohibiting a lawyer from intentionally prejudicing or damaging a client); and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in an investigation of professional misconduct).

## Count II

{¶ 8} On January 9, 2003, a client and his fiancée retained respondent to obtain custody of the client's son, paying respondent $500. On January 21, 2003, respondent telephoned the couple at approximately 11:00 p.m. and asked to borrow $13,000 from his client, who advised respondent that he did not have the money. The next day, the client dismissed respondent because of this incident, and several days later, the client asked respondent by certified letter to return

the $500 fee. The letter was returned unclaimed. Respondent has also not returned telephone calls and, as of February 9, 2004, had not repaid his fee.

{¶ 9} The fiancée filed a grievance, and relator employed an investigator to hand deliver a letter of inquiry and the original complaint to respondent. On June 24, 2003, in reply to these documents, respondent acknowledged that he had agreed to represent this client and had charged a $500 retainer for his services in the custody case. Respondent also stated that he had needed to reacquaint himself with custody law and had consulted a colleague who was familiar with custody disputes like the one in his client's case. As a result, respondent claimed in the letter to have earned the $500 retainer.

{¶ 10} In a June 26, 2003 letter, relator asked respondent to verify his research and identify the attorney with whom he had consulted. Respondent did not respond to this request.

{¶ 11} As to Count II, the board found that respondent had violated DR 9–102(B)(4) (requiring a lawyer to, upon request, promptly pay funds in the lawyer's possession that a client is entitled to receive).

## Sanction

{¶ 12} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating features of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating features, the board first found that respondent had previously been suspended from the practice of law for failing to pay child support, In re Griffith (1998), 83 Ohio St.3d 1440, 700 N.E.2d 30, a sanction that was lifted less than a month later upon notice that he was no longer in default. In re Griffith (1998), 83 Ohio St.3d 1454, 700 N.E.2d 617. BCGD Proc.Reg. 10(B)(1)(a). Beyond this transgression, the board found a pattern of misconduct, multiple offenses, a lack of cooperation in the disciplinary process, harm to vulnerable victims, and a failure to make restitution. BCGD Proc.Reg. 10(B)(1)(c), (d), (e), and (h). With respect to Count I, the board noted that respondent was paid $2,500 to file an appeal for an incarcerated client but did not, that he had no appreciable contact with his client after an initial visit, and that he did not account for or return his legal fee. Although respondent did reply to an investigative letter regarding Count II, he never formally explained his conduct to relator regarding Count I.

{¶ 13} As for mitigating features, the board found only one that could be considered applicable—respondent's medical condition. In his reply to the letter of inquiry concerning Count II, respondent offered a May 1, 2003 physician's report documenting respondent's diabetes, history of congestive heart failure, and

coronary bypass surgery. This physician concluded that based on respondent's chronic fatigue and his medical history, respondent is "unable to proceed to trial or any other stressful activity until the cause of his symptoms is determined and corrected" and "should not work more than 3 or 4 hours a day until his prognosis is resolved." Respondent also submitted a second physician's report, dated June 2, 2003, from a board-certified sleep specialist, who described respondent's clinically obstructive sleep apnea syndrome.

{¶ 14} The board, however, found no indication that respondent's ailments contributed to the events underlying either Count I or II, a finding that might have been modified if respondent had participated in the disciplinary process.

{¶ 15} Relator recommended an indefinite suspension from the practice of law for respondent's misconduct. Accepting this suggestion, the master commissioner recommended that respondent receive an indefinite suspension from the practice of law and be further ordered, as a condition of any application for reinstatement, to pay $2,500 in restitution in connection with Count I and $500 in restitution to the client in Count II. The board adopted this recommendation.

{¶ 16} Upon review, we agree that respondent violated DR 1–102(A)(6), 2–106(A), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(4), and Gov.Bar R. V(4)(G). We also agree that an indefinite suspension with restitution is appropriate. See *Cuyahoga Cty. Bar Assn. v. Lawrence*, 101 Ohio St.3d 4, 2003-Ohio-6450, 800 N.E.2d 1108, (an indefinite suspension is warranted when an attorney neglects legal matters, fails to cooperate in the ensuing disciplinary investigation, and has a prior disciplinary infraction, and there is little, if any, evidence of mitigation). Respondent is therefore indefinitely suspended from the practice of law in Ohio. Upon any application for reinstatement, respondent must document, consistent with the requirements of Gov.Bar R. V(10)(E)(1), that he has made restitution, with interest at the judgment rate, in the amounts of $2,500 for Count I and $500 for Count II, as recommended by the board. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

———

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Beckman, Assistant Disciplinary Counsel, for relator.