DAYTON BAR ASSOCIATION v. SEBREE.

[Cite as Dayton Bar Assn. v. Sebree, 104 Ohio St.3d 448, 2004-Ohio-6560.]

(No. 2004–1060—Submitted August 17, 2004—Decided December 15, 2004.)

**Per Curiam.**

{¶ 1} Respondent, Ronald H. Sebree of Dayton, Ohio, Attorney Registration No. 0063210, was admitted to the practice of law in Ohio in 1994. On July 3, 2002, we suspended respondent's license to practice for six months but stayed imposition of this sanction on conditions that respondent submit to monitoring of his office practices and management skills for one year and pursue further training in office management. *Dayton Bar Assn. v. Sebree,* 96 Ohio St.3d 50, 2002-Ohio-2987, 770 N.E.2d 1009.

{¶ 2} On December 11, 2002, relator, Dayton Bar Association, filed an amended complaint charging respondent with violating the Code of Professional Responsibility. Respondent was served with the amended complaint but did not answer, and relator filed for default pursuant to Gov.Bar R. V(6)(F). The motion was supported by an affidavit [1] signed by an attorney investigator.

---

1. {¶ a} The affidavit states:

{¶ b} "1. I am an attorney licensed to practice law in the State of Ohio;

{¶ c} "2. I was contacted by the Dayton Bar Association to follow up on the investigation of a Deborah Smith against a local attorney, Ronald H. Sebree;

{¶ d} "3. A member of the Certified Grievance Committee of the Dayton Bar Association initially investigated the matter and subsequently was unable to continue as the Bar's representative;

{¶ e} "4. During the course of the investigation, the member talked with Ms. Smith on the telephone and met with Mr. Sebree;

{¶ f} "5. At the conclusion of the member's investigation, he determined that Ms. Smith had employed Mr. Sebree to end her marriage by dissolution and that he had advised her it would be done prior to her new scheduled wedding date in early September;

{¶ g} "6. Ms. Smith paid Mr. Sebree in advance and signed the Separation Agreement and Petition in May of 2001;

{¶ h} "7. By July 30, 2001, Mr. Sebree had still not filed the dissolution paperwork with the Court and Ms. Smith filed a complaint with the Dayton Bar Association;

{¶ i} "8. Ms. Smith eventually found another lawyer to complete her dissolution and Mr. Sebree refused to refund the payment previously made;

{¶ j} "9. I determined during the course of my investigation of Mr. Sebree that he did not have a trust account as required by the rules governing lawyer conduct in the State of Ohio;

{¶ k} "10. Further, I determined that Mr. Sebree was commingling client funds with his own and not properly administering court refunds back to clients;

{¶ 3} Relator filed a second affidavit[2] in support of the motion for default judgment upon advisement that the first affidavit failed to provide any sworn or certified documentary prima facie evidence with regard to claims in the complaint that respondent had mishandled a client's case.

{¶ 4} A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

## Sufficiency of Supporting Evidence

{¶ 5} Gov.Bar R. V(6)(F)(1)(b) requires that a motion for default in a disciplinary proceeding be supported by "[s]worn or certified documentary prima facie evidence in support of the allegations made." In addition, Gov.Bar R. V(6)(J) establishes a standard of clear and convincing proof in disciplinary cases that proceed to a hearing, including those that result after a case survives a motion for default.

---

{¶ l} "11. In addition, I determined that Mr. Sebree was not following recent amendments to the Ohio Code of Professional Responsibility, was not advising clients that he did not carry professional malpractice insurance, and not appropriately documenting his files regarding same;

{¶ m} "12. It is my opinion that the conduct of Mr. Sebree in this matter violates Disciplinary Rule DR9–102(A) and DR9–102(B) and DR1–104."

2. {¶ a} The second affidavit stated:

{¶ b} "1. I am an attorney at law, duly licensed to practice law in the State of Ohio. * * *

{¶ c} "2. I am currently a member of the Certified Grievance Committee of the Dayton Bar Association, and have been for a number of years.

{¶ d} "3. In my capacity as a member of the Certified Grievance Committee of the Dayton Bar Association, I was asked to investigate a complaint by Sophia Battigaglia against Attorney Ronald H. Sebree, Esq. I received Ms. Battigaglia's complaint against Attorney Sebree on August 30, 2002.

{¶ e} "4. During the course of my investigation of Ms. Battigaglia's complaint, I discovered that, on July 20, 2001, Ms. Battigaglia saw Attorney Sebree regarding some probate matters; that Attorney Sebree accepted a $500.00 retainer from Ms. Battigaglia at that time to handle the probate matters; that, after accepting the $500.00 retainer, Attorney Sebree did nothing whatsoever regarding the probate matters; and that Ms. Battigaglia was eventually required to hire another attorney to handle the probate matters.

{¶ f} "5. During the course of my investigation of Ms. Battigaglia's complaint, I attempted to contact Attorney Sebree by letter on three occasions (he had no working telephone number at that time), requesting that he contact me regarding the investigation. Although none of my letters were returned to me by the post office, Attorney Sebree did not contact me as I requested and he did not respond to my letters in any fashion.

{¶ g} "6. As a result of my investigation of Ms. Battigaglia's complaint, I conclude that Attorney Sebree violated DR6–101(A)(3) (neglecting a matter entrusted to him), DR7–101(A)(2) (failing to carry out a contract of employment entered into with a client for professional services), Gov.Bar R. V(4)(G) (failure to cooperate with my investigation), and possibly DR1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation)."

{¶ 6} The case at bar requires us to review a recommendation issued pursuant to the grant of a motion for default as authorized by Gov.Bar R. V(6)(F). It is similar to two other disciplinary cases recently considered by us: *Northwestern Bar Assn. v. Lauber,* 104 Ohio St.3d 121, 2004-Ohio-6237, 818 N.E.2d 687, and *Dayton Bar Assn. v. Parker,* 104 Ohio St.3d 117, 2004-Ohio-6236, 818 N.E.2d 684.

{¶ 7} In *Lauber,* we denied the motion for default and remanded the cause for further investigation and proceedings because the findings were not based on the personal knowledge of any affiant. Rather, the board found misconduct in *Lauber* based entirely on an investigator's secondhand and conclusory assessment apparently gleaned from conversations with those who had filed grievances against the attorney. We held that a "summary, conclusory, and hearsay-filled" affidavit was not "of sufficient weight or probative force to constitute the '[s]worn or certified documentary prima facie evidence' that Gov.Bar R. V(6)(F)(1)(b) requires to sustain a motion for default."

{¶ 8} In *Parker,* this court indefinitely suspended an attorney from the practice of law based on violations of multiple Disciplinary Rules and Gov.Bar R. V(4)(G) (requiring an attorney to cooperate in a disciplinary investigation), as confirmed by investigator affidavits. The dissent concluded that those affidavits did not adequately support the motion for default judgment under Gov.Bar R. V(6)(F)(1)(b), observing that they contained "summary, conclusory assessments of misconduct based solely on conversations with the four grievants and [were] not based upon personal knowledge." *Dayton Bar Assn. v. Parker,* 104 Ohio St.3d 117, 2004-Ohio-6236, 818 N.E.2d 684 (Lundberg Stratton, J., dissenting). We note that the attorney in *Parker* was subject to discipline for his violation of Gov.Bar R. V(4)(G) independently of any other misconduct, see, e.g., *Lake Cty. Bar Assn. v. Vala* (1998), 82 Ohio St.3d 57, 693 N.E.2d 1083, and that the investigator's affidavits in that case were based on first-hand, personal knowledge of the underlying failure to cooperate.

{¶ 9} We affirm today the principle established in *Lauber.* A motion for default in a disciplinary proceeding supported only by summary, conclusory, and hearsay-filled affidavits is not supported by the prima facie evidence of misconduct required by Gov.Bar R. V(6)(F). Local bar associations appearing as relators in disciplinary hearings should therefore provide affidavits executed by the grievants themselves in moving for default. Where the grievant is unavailable, an affidavit executed by an investigator may suffice, but the affidavit must delineate why the grievant's sworn statement is unattainable in addition to reciting the investigator's own knowledge of the alleged misconduct.

Misconduct

*Smith Grievance*

{¶ 10} We are told by the first investigator's affidavit that Deborah Smith engaged respondent sometime prior to May 2001 to assist her in terminating her

marriage. Smith paid respondent a retainer and signed a separation agreement and petition. By July 30, 2001, the petition had not been filed, and Smith filed a grievance with relator. Smith eventually had to find another lawyer, and respondent allegedly refused to refund the retainer.

{¶ 11} From this affidavit, the board found that respondent had refused to refund Smith's retainer and thereby violated DR 9–102(B)(4) (requiring an attorney to promptly return client's property upon request). We reject this finding. Although relator's complaint purported to charge a violation of DR 9–102(B)(4), the complaint did not specify that this misconduct emanated from Smith's grievance or state any factual basis for the charge. To the contrary, the complaint stated that "the Smith complaint lacked sufficient merit to warrant the filing of a grievance procedure against Mr. Sebree." Respondent was thus not sufficiently charged with a violation of DR 9–102(B)(4).

{¶ 12} The board also relied on this affidavit to find violations of DR 9–102(A) (requiring an attorney to deposit client funds in separate identifiable bank account), 9–102(B)(2) (requiring an attorney to promptly identify client's property upon receipt and put such property in a place of safekeeping), and 9–102(B)(3) (requiring an attorney to maintain complete records and appropriately account for client's property). To substantiate these findings, however, the underlying affidavit offers hearsay at best and double hearsay at worst. All that we know from the investigator's account is what the charged attorney told a previous investigator or perhaps what the attorney's client told the affiant. We cannot even tell which source provided what information. The affiant's statements that she "determined that Mr. Sebree was commingling client funds with his own" and had committed other misconduct are no more than summary conclusions reminiscent of those found insufficient in *Lauber*.

*Battigaglia Grievance*

{¶ 13} According to the second investigator's affidavit, Sophia Battigaglia paid respondent $500 on July 20, 2001, to represent her in some probate matters. Respondent took no action on the client's behalf, and she was eventually required to hire another attorney. The board found that respondent had thereby violated DR 6–101(A)(3) (prohibiting an attorney from neglecting a legal matter) and 7–101(A)(2) (requiring an attorney to carry out a contract of employment).

{¶ 14} We also reject these findings of misconduct for lack of sufficient proof. Again, information in the affidavit seems to have been gleaned entirely from conversations with the grievant. Because the affiant did not possess personal knowledge of the alleged misconduct, his sworn statement is not the prima facie evidence required by Gov.Bar R. V(6)(F).

{¶ 15} The board also found that respondent had violated DR 1–104(A) (requiring an attorney to notify clients if the attorney "does not maintain

professional liability insurance in the amounts of at least one hundred thousand dollars per occurrence and three hundred thousand dollars in the aggregate" or if the professional liability insurance is terminated). We reject this finding because no evidence establishes that respondent committed this misconduct after July 1, 2001, the effective date of DR 1–104.

### Disposition

{¶ 16} Having found that the record before us lacks the reliable evidentiary support required to support the charges of misconduct against respondent on a motion for default, we return this cause to the board for further proceedings and findings consistent with our order, including the submission and consideration of evidence that directly establishes the charges of respondent's misconduct.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

———————

Allbery Cross Fogarty and Canice J. Fogarty, for relator.