Erie–Huron Counties Joint Certified Grievance Committee *v.* Huber.

[Cite as *Erie–Huron Counties Joint Certified Grievance Commt. v. Huber,* 108 Ohio St.3d 338, 2006-Ohio-1066.]

(No. 2005–1542—Submitted September 28, 2005—Decided March 22, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Richard Roman Huber of Milan, Ohio, Attorney Registration No. 0000087, was admitted to the Ohio bar in 1955. In 1983, we publicly reprimanded respondent for violating DR 1–102(A)(4) (barring conduct involving fraud, deceit, dishonesty, or misrepresentation), 1–102(A)(5) (barring conduct that is prejudicial to the administration of justice), 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), and 9–101(C) (barring a lawyer from stating or implying that the lawyer is able to influence improperly a tribunal, legislative body, or public official). *Disciplinary Counsel v. Huber* (Dec. 21, 1983), Ohio No. DD 83–34. On December 2, 2005, respondent was suspended for failure to file a certificate of registration and pay the fee required under Gov.Bar R. VI for the 2005–2007 biennium. 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671.

{¶ 2} On February 7, 2005, relator, the Erie–Huron Counties Joint Certified Grievance Committee, filed a complaint charging respondent with five counts of professional misconduct. Respondent was served with a copy of the complaint but did not answer, and relator moved for default under Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of misconduct and a recommendation, all of which the board adopted.

Misconduct

*Count I*

{¶ 3} In September 2003, William Hartman retained respondent to represent him in a child-custody matter and paid $400 to respondent for his services.

Respondent, however, never filed any paperwork to effect the change of custody that Hartman sought and never returned Hartman's money or the case file as Hartman requested.

{¶ 4} The board found that respondent had violated DR 1–102(A)(6) and 6–101(A)(3).

## Count II

{¶ 5} In December 2003, Melissa and Donald Mantz retained respondent to represent them in a child-custody matter. They paid $555 to respondent over the course of several weeks with the expectation that respondent would be filing documents in court on their behalf. Respondent, however, never filed any paperwork to effect the change of custody sought by his clients, despite repeatedly promising them that he would do so within a matter of days.

{¶ 6} The board found that respondent had violated DR 1–102(A)(4), 1–102(A)(6), and 6–101(A)(3).

## Count III

{¶ 7} In January or February 2002, Daniel Hall retained respondent to represent him in a foreclosure matter and paid $800 to respondent for his services. During the representation, respondent told Hall that he had filed a foreclosure complaint in court on Hall's behalf, but that statement was untrue. Respondent also collected $500 from Hall for a deposition that respondent claimed to have taken, but in fact, that deposition never occurred.

{¶ 8} Respondent performed little or no legal work for Hall between 2002 and 2004, and he acknowledged during relator's investigation that he was not "up to par" on Hall's case. That case—which involved a trust established for Hall's benefit—was complex, as respondent himself acknowledged during relator's investigation, and it was clear from respondent's statements to relator that he rarely handled complex trust matters in his legal practice.

{¶ 9} The board found that respondent had violated DR 1–102(A)(4), 6–101(A)(1) (prohibiting a lawyer from accepting a case that the lawyer is not competent to handle), and 6–101(A)(3).

## Counts IV and V

{¶ 10} During its investigation of respondent's alleged misconduct, relator asked respondent to provide information about his liability-insurance coverage. Respondent stated that he was insured for malpractice during the period of the alleged misconduct, but he could not recall the name of the insurance company, and he never provided any documents to prove that he was properly insured, despite promising to do so.

{¶ 11} The board found that respondent had violated DR 1–104(A) (requiring an attorney who does not maintain adequate professional-liability insurance to so advise his or her clients in writing) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in an investigation of professional misconduct).

## Sanction

{¶ 12} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had spoken dishonestly to Daniel Hall and the Mantzes during his representation of them, had engaged in a pattern of misconduct, and had committed multiple offenses. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (f). And though respondent was generally cooperative during the disciplinary process, he failed to provide proof of his insurance coverage as he had promised. BCGD Proc.Reg. 10(B)(1)(e). Also, the board noted that respondent had failed to acknowledge the wrongful nature of his conduct in connection with his representation of William Hartman and the Mantzes, that he had caused harm to vulnerable clients, and that he had failed to provide restitution to those clients. BCGD Proc.Reg. 10(B)(1)(g), (h), and (i).

{¶ 13} The board cited respondent's 50 years of legal practice as a mitigating factor.

{¶ 14} Relator recommended that respondent's license to practice law be suspended for six months. The master commissioner and the board instead concluded that a more severe sanction—an indefinite suspension—was warranted for respondent's misconduct.

{¶ 15} We agree that respondent violated all of the provisions recited above, but we find that a more lenient sanction than the one recommended by the board is appropriate. To be sure, we have held that neglect of legal matters and the failure to cooperate in the ensuing disciplinary investigation often warrant an indefinite suspension from the practice of law. See, e.g., *Disciplinary Counsel v. Treneff*, 104 Ohio St.3d 336, 2004-Ohio-6562, 819 N.E.2d 695, ¶ 16. Respondent's misconduct in this case must be balanced, however, against his long career in the legal profession. Although he made dishonest statements to three of his clients during his representation of them, failed to provide requested information to relator about his malpractice-insurance coverage, and apparently has been unwilling to refund fees to the clients whose legal affairs he neglected, a one-year suspension will be sufficient to protect the public from further misconduct on the part of respondent.

{¶ 16} Accordingly, respondent is hereby suspended from the practice of law in Ohio for one year. Before he may be reinstated, respondent must refund $400 to William Hartman, $180 to Melissa and Donald Mantz, and $1,300 to Daniel Hall for the legal services he promised but failed to provide. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, PFEIFER, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

MOYER, C.J., and O'CONNOR, J., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 17} I respectfully dissent. In recommending that respondent be indefinitely suspended for his misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had spoken dishonestly to Daniel Hall and the Mantzes during his representation of them, had engaged in a pattern of misconduct, and had committed multiple offenses. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (f). And though respondent was generally cooperative during the disciplinary process, he failed to provide proof of his insurance coverage as he had promised. BCGD Proc.Reg. 10(B)(1)(e). Also, the board noted that respondent had failed to acknowledge the wrongful nature of his conduct in connection with his representation of William Hartman and the Mantzes, that he had caused harm to vulnerable clients, and that he had failed to provide restitution to those clients. BCGD Proc.Reg. 10(B)(1)(g), (h), and (i).

{¶ 18} The majority agrees that respondent violated all of the provisions recited above, but finds that a more lenient sanction than the one recommended by the board is appropriate.

{¶ 19} On at least three separate occasions, respondent accepted legal fees and failed to perform any legal work. "Taking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client." *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 16. Compounding matters, respondent falsely told a client that he had filed legal documents when in fact he had not. "[W]hen faced with misappropriation and other professional misconduct * * *, *including misrepresentations of filings never made,* we have imposed our strictest sanction." (Emphasis added.) Id.

{¶ 20} The majority noted also that respondent failed to fully cooperate with the disciplinary investigation. "As we have consistently held, neglect of legal matters and the failure to cooperate in the ensuing disciplinary investigation warrant an indefinite suspension from the practice of law." *Columbus Bar Assn. v. Torian,* 106 Ohio St.3d 14, 2005-Ohio-3216, 829 N.E.2d 1210, ¶ 17, citing *Disciplinary Counsel v. Treneff,* 104 Ohio St.3d 336, 2004-Ohio-6562, 819 N.E.2d 695, ¶ 16. Given this court's extensive jurisprudence in this area, an indefinite suspension is warranted. *Disciplinary Counsel v. Griffith,* 104 Ohio St.3d 50, 2004-Ohio-5991, 818 N.E.2d 226; *Lorain Cty. Bar Assn. v. Kaderbek,* 100 Ohio St.3d 295, 2003-Ohio-5754, 798 N.E.2d 607; *Disciplinary Counsel v. Washington,* 97 Ohio St.3d 483, 2002-Ohio-6723, 780 N.E.2d 571; *Cincinnati Bar Assn. v. Watson* (2001), 92 Ohio St.3d 413, 750 N.E.2d 1114.

{¶ 21} Here an attorney accepted at least three retainers and failed to take any legal action on behalf of his clients, misrepresented facts to his clients, and failed to cooperate in the disciplinary process. The only reason cited by the majority for making an exception to our consistent sanctions for those attorneys who have engaged in conduct similar to that of respondents is that he has a "long career in the legal profession." That is a new standard. I can only hope that this is the sole case in which it will be applied as the reason for such leniency.

{¶ 22} We should adopt the recommendation of the Board of Commissioners on Grievances and Discipline and issue an indefinite suspension to assure those who use the services of lawyers in Ohio that we are serious about our responsibility to appropriately sanction those lawyers who breach the rules of ethical conduct. Respondent's pattern of misconduct should require that upon his application for readmission, he be required to meet the standards of Gov.Bar R. V(10)(C) rather than the less stringent requirements of Gov.Bar R. V(10)(A). For these reasons, I respectfully dissent and would indefinitely suspend the respondent from the practice of law.

O'CONNOR, J., concurs in the foregoing opinion.

———————

Richard B. Hauser, for relator.