BUTLER COUNTY BAR ASSOCIATION *v.* CORNETT.

[Cite as *Butler Cty. Bar Assn. v. Cornett,*
109 Ohio St.3d 347, 2006-Ohio-2575.]

(No. 2004–2078—Submitted February 8, 2006—Decided June 7, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Candie Lynn Cornett of Hamilton, Ohio, Attorney Registration No. 0059489, was admitted to the Ohio bar in 1992. On June 7, 2004, relator, Butler County Bar Association, charged respondent in an amended complaint with multiple violations of the Code of Professional Responsibility. Attempts to serve respondent were unsuccessful, and the complaint was served on the Clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B). Apparently, respondent was aware of client grievances against her and relator's investigation, but did not answer. Relator moved for default under Gov.Bar R. V(6)(F).

{¶ 2} A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion for default. The master commissioner found misconduct in connection with all 22 counts of the complaint and recommended that respondent be permanently disbarred. The board adopted the master commissioner's findings of fact, conclusions of law, and recommendation.

{¶ 3} After reviewing the board's report, we remanded the case to the board for evidence and findings in accordance with *Dayton Bar Assn. v. Sebree,* 104 Ohio St.3d 448, 2004-Ohio-6560, 820 N.E.2d 318. *Butler Cty. Bar Assn. v. Cornett,* 106 Ohio St.3d 1418, 2005-Ohio-3322, 830 N.E.2d 349. As we explained in *Sebree,* "A motion for default in a disciplinary proceeding supported only by summary, conclusory, and hearsay-filled affidavits is not supported by the prima facie evidence of misconduct required by Gov.Bar R. V(6)(F)." *Sebree,* 104 Ohio St.3d 448, 2004-Ohio-6560, 820 N.E.2d 318, ¶ 9.

{¶ 4} Relator then filed additional affidavits with the board in support of the motion for default. The master commissioner reviewed the additional evidence and dismissed all allegations in Counts II through IX and Counts XI, XIII, XV, XIX, and XXII of the amended complaint except some of the alleged violations of Gov.Bar R. V(4)(G). The dismissed charges were not supported by clear and convincing evidence, according to the master commissioner.

{¶ 5} He found, however, that the remaining allegations in the amended complaint had been proven, and he again recommended that respondent be disbarred. The board adopted the master commissioner's findings of fact, conclusions of law, and recommendation and added conclusions as to Count XVIII. The case is now before us for consideration of the board's report.

## Misconduct

### Count I

{¶ 6} Respondent neglected the divorce case of Debra Toeppe, whom she had apparently represented in the late 1990s, by failing to file a proposed qualified domestic relations order after Toeppe's divorce. Respondent admitted this misconduct while providing testimony in June 2002 during relator's investigation of Toeppe's grievance. Prior to this proceeding, however, respondent had failed to respond to an investigative inquiry, and she apparently had no further contact with relator about the grievance after her testimony.

{¶ 7} We therefore adopt the board's findings that respondent violated the following Disciplinary Rules: DR 6–101(A)(2) (barring the handling of a legal matter without adequate preparation) and 6–101(A)(3) (barring a lawyer from neglecting an entrusted legal matter), as well as Gov.Bar R. V(4)(G) (requiring attorneys to cooperate with and assist in any disciplinary investigation).

### Count VI

{¶ 8} Respondent did not reply when relator asked her to respond to a grievance filed by Shannon Niehaus in 2003. We therefore adopt the board's finding that respondent violated Gov.Bar R. V(4)(G).

### Count VII

{¶ 9} Respondent did not reply when relator asked her to respond to a grievance filed by Sandra Kearse in 2003. We therefore adopt the board's finding that respondent violated Gov.Bar R. V(4)(G).

### Counts VIII and IX

{¶ 10} Respondent did not reply when relator asked her to respond to grievances filed by Marie Stansell and Sharon Kennedy in 2003. We therefore

adopt the board's finding that respondent violated Gov.Bar R. V(4)(G) with respect to both of those grievances.

## Count X

{¶ 11} In August 2002, Delana M. Carter retained respondent to represent her in a divorce case and paid $2,000 to the respondent for her services. Respondent spent several weeks preparing paperwork for Carter and her husband to sign, but after signing, Carter was unable to contact respondent again, despite numerous attempts over several months. Without a final order in the divorce case, Carter could not compel her husband to pay child support or other obligations, and she was forced to apply for government benefits to support her family. Respondent did not reply when relator asked her to respond to a grievance filed by Carter in 2003.

{¶ 12} We therefore adopt the board's finding that respondent violated DR 6–101(A)(3), 7–101(A)(2) (requiring a lawyer to carry out a contract of employment), and 7–101(A)(3) (barring conduct that prejudices or damages a client), as well as Gov.Bar R. V(4)(G).

## Count XI

{¶ 13} Respondent did not reply when relator asked her to respond to a grievance filed by Jeanine M. Rose in 2003. We therefore adopt the board's finding that respondent violated Gov.Bar R. V(4)(G).

## Count XII

{¶ 14} After Jeanine Rose terminated respondent as her lawyer in a divorce proceeding and hired attorney John Hilgeman, respondent did not give Rose's case file to Hilgeman as he requested. Respondent also did not reply when relator asked her to respond to a grievance filed by Hilgeman in 2003.

{¶ 15} We therefore adopt the board's finding that respondent violated DR 1–102(A)(5) (barring conduct prejudicial to the administration of justice), 7–101(A)(3), and 9–102(B)(4) (requiring prompt payment of the client's funds or other property in the lawyer's possession), as well as Gov.Bar R. V(4)(G).

## Count XIII

{¶ 16} Respondent did not reply when relator asked her to respond to a grievance filed by Deborah L. Parker in 2003. We therefore adopt the board's finding that respondent violated Gov.Bar R. V(4)(G).

### Count XIV

{¶ 17} Pamela and Royal Smith hired respondent in October 2002 to represent them in a bankruptcy matter, and they paid her $400. Although respondent assured them that she would take care of their bankruptcy filing, she evidently took no action on their behalf, and two of Royal Smith's paychecks were garnished for a total of $766.59. Respondent did not return the Smiths' money or reimburse them for the garnished wages, and she failed to reply to relator's inquiries about a grievance filed by the Smiths in 2003.

{¶ 18} We therefore adopt the board's finding that respondent violated DR 6–101(A)(3), 7–101(A)(3), and 9–102(B)(4), as well as Gov.Bar R. V(4)(G).

### Count XV

{¶ 19} Respondent did not reply when relator asked her to respond to a grievance filed by Harold and Mary James in 2003. We therefore adopt the board's finding that respondent violated Gov.Bar R. V(4)(G).

### Count XVI

{¶ 20} In February 2002, Adrienne R. Simonton retained respondent to represent her in dissolution and bankruptcy matters and paid $1,750 to respondent for her services. Respondent failed to appear at a hearing in Simonton's dissolution case even though Simonton had left several messages for her before the hearing. Respondent never returned the calls, never filed the necessary paperwork to complete the dissolution, and never performed work needed by Simonton for the bankruptcy case. Simonton wrote letters to respondent terminating the representation and asking for a refund. Respondent never replied, never returned any money, and never responded to relator's inquiries about a grievance filed by Simonton in 2003.

{¶ 21} We therefore adopt the board's findings that respondent violated DR 1–102(A)(5), 6–101(A)(3), 7–101(A)(3), and 9–102(B)(4), as well as Gov.Bar R. V(4)(G).

### Count XVII

{¶ 22} In September 2002, William R. Bingamon retained respondent to represent him in a divorce case and paid a total of $1,000 in September and October 2002 to respondent for her services. For four months after filing a divorce complaint on Bingamon's behalf in October 2002, respondent failed to perfect service of that complaint on Bingamon's wife. When respondent did not return his calls about the case, Bingamon terminated the representation and requested a refund. Respondent never returned any money and never responded to relator's inquiries about a grievance filed by Bingamon in 2003.

{¶ 23} We therefore adopt the board's findings that respondent violated DR 1–102(A)(5), 6–101(A)(3), and 7–101(A)(2), as well as Gov.Bar R. V(4)(G).

## Count XVIII

{¶ 24} In November 2002, respondent filed a motion for reallocation of parental rights on behalf of Karen Bargiel. A hearing on the motion was scheduled for February 19, 2003, but respondent failed to serve opposing counsel with a notice of the hearing. It was rescheduled for a date in April 2003, but again respondent failed to serve opposing counsel and this time failed to appear at the hearing herself. Bargiel did appear at the hearing and told the magistrate that respondent had failed to return her calls since the first hearing date. Respondent never replied to relator's inquiries about a grievance filed by the magistrate in 2003.

{¶ 25} We therefore adopt the board's findings that respondent violated DR 6–101(A)(3) and 7–101(A)(2), as well as Gov.Bar R. V(4)(G).

## Count XIX

{¶ 26} Respondent did not reply when relator asked her to respond to a grievance filed by Angela Parker in 2003. We therefore adopt the board's finding that respondent violated Gov.Bar R. V(4)(G).

## Count XX

{¶ 27} In September 2002, Leon B. Bailey retained respondent to represent him in a divorce case and paid $1,000 to respondent for her services. Bailey signed paperwork prepared by respondent, but the paperwork was evidently never filed by respondent in court, and Bailey did not obtain the divorce that he had wanted. He and his wife tried to speak with respondent, but she did not reply, and she never returned any money to Bailey. Respondent also never responded to relator's inquiries about a grievance filed by Bailey in 2003.

{¶ 28} We therefore adopt the board's findings that respondent violated DR 6–101(A)(3), 7–101(A)(3), and 9–102(B)(4), as well as Gov.Bar R. V(4)(G).

## Count XXI

{¶ 29} At some point before June 2003, Jabe Smith retained respondent to represent him in a child-custody case and paid $1,500 to respondent for her services. Respondent told Smith that the case would be heard in court several months later, but after several months had passed with no news from respondent, Smith tried without success to contact her. Respondent evidently took no action in the case on Smith's behalf and never returned his case file or the retainer. She also never responded to relator's inquiries about a grievance filed by Smith in 2003.

{¶ 30} We therefore adopt the board's findings that respondent violated DR 6–101(A)(3) and 7–101(A)(3), as well as Gov.Bar R. V(4)(G).

### Sanction

{¶ 31} In recommending a sanction for this misconduct, we take into account, as did the board, the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, we adopt the board's findings that respondent acted with a selfish motive, committed a pattern of misconduct and multiple offenses, did not cooperate in the disciplinary process, harmed vulnerable victims, and failed to make restitution. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), (h), and (i). We also acknowledge several cited mitigating factors, including the absence of any prior disciplinary record, BCGD Proc.Reg. 10(B)(2)(a), the postpartum depression experienced by respondent during some of the events at issue, and the difficulties she encountered when her husband—a Greek national—was living in Canada and was unable to secure a visa that would allow him to work there.

{¶ 32} Relator recommended that respondent be permanently disbarred from the practice of law for her misconduct. The master commissioner and the board accepted this recommendation.

{¶ 33} Having found that respondent violated DR 1–102(A)(5), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(4), as well as Gov.Bar R. V(4)(G), we also agree that permanent disbarment is appropriate. Respondent has seriously and repeatedly neglected her clients, has ignored investigative inquiries of the grievances against her, and has evidently taken no steps to repay the clients from whom she accepted retainers. As we said in *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 16: "Taking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client. *Disciplinary Counsel v. Sigall* (1984), 14 Ohio St.3d 15, 17, 14 OBR 320, 470 N.E.2d 886. The presumptive disciplinary measure for such acts of misappropriation is disbarment. *Disciplinary Counsel v. France*, 97 Ohio St.3d 240, 2002-Ohio-5945, 778 N.E.2d 573, ¶ 11." We see no reason in this record why that presumption should not be followed in this case.

{¶ 34} Accordingly, respondent is hereby permanently disbarred from the practice of law in Ohio, and she is ordered to pay restitution to her former clients within 30 days in an amount to be determined by relator. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

Adolf Olivas, Bennett A. Manning, and Megan Richards, for relator.