**DISCIPLINARY COUNSEL *v.* GRIFFITH.**

**[Cite as *Disciplinary Counsel v. Griffith*, 112 Ohio St.3d 134, 2006-Ohio-6518.]**

*Attorneys — Misconduct — Conduct prejudicial to the administration of justice — Neglect of entrusted legal matter — Failure to return client's property upon request — Failure to cooperate in a disciplinary investigation — Permanent disbarment.*

(No. 2006-1183 – Submitted September 20, 2006 — Decided December 27, 2006.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 05-058.

_____

**Per Curiam**.

{¶ 1} Respondent, Curtis Griffith Jr., last known address in New Lexington, Ohio, Attorney Registration No. 0030707, was admitted to the practice of law in Ohio in 1970. On November 24, 2004, we indefinitely suspended respondent's license for professional misconduct, including neglecting clients' cases and then failing to repay unearned legal fees. *Disciplinary Counsel v. Griffith*, 104 Ohio St.3d 50, 2004-Ohio-5991, 818 N.E.2d 226. Respondent's license remains under suspension.

{¶ 2} On June 13, 2005, relator, Disciplinary Counsel, charged respondent with three additional counts of professional misconduct. Relator attempted to serve respondent with the complaint by certified mail at his address as on file with the Attorney Registration Section and at a new address in accordance with a notice from the United States Post Office. Both mailings were returned unclaimed, and relator served the complaint on the Clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B).

**{¶ 3}** Upon respondent's failure to answer, relator moved for default pursuant to Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of misconduct and recommending a sanction. The board adopted the master commissioner's findings of fact, conclusions of law, and recommendation.

Misconduct

**{¶ 4}** Count I of the complaint alleged that respondent had mishandled Troy A. Ankrum's representation in seeking relief from a paternity judgment. Count II charged that respondent had mishandled the defense of Gordon W. Hutchinson to allegations of failure to pay child support. Count III accused respondent of failing to cooperate in the investigation of the charged misconduct.

**{¶ 5}** As to Count I, evidence established that respondent agreed to represent Ankrum in March 2004 and help him obtain relief in Muskingum County Probate Court from a 1993 judgment establishing Ankrum as a child's legal father. Ankrum eventually paid respondent $2,900, $400 of which respondent was to use to pay for DNA testing. DNA testing of Ankrum, the child's mother, and the child was completed in July 2004. On August 10, 2004, respondent moved for relief from the 1993 judgment.

**{¶ 6}** On September 15, 2004, Ankrum wrote to respondent asking for the DNA test results. Respondent did not reply. On October 13, 2004, Ankrum paid another $398 to obtain the results himself. On that day, Ankrum also wrote again to respondent, asking for a $400 refund. Respondent neither replied nor refunded his client's money.

**{¶ 7}** On October 26, 2004, the Muskingum County probate judge wrote to respondent, advising that the court had received the DNA test results, had called respondent without success, and needed to know how to proceed. On October 31, 2004, Ankrum wrote to respondent expressing his disappointment with respondent's representation and asking for a reply within three days.

Respondent moved for the probate court's consideration of the DNA test results and for a hearing on November 1, 2004; however, he did not contact his client and took no further action on Ankrum's behalf.

{¶ 8}  On December 16, 2004, the probate judge advised Ankrum that respondent's license had been indefinitely suspended.  Respondent had not notified Ankrum of his suspension before that time, nor did he do so afterward. From March 26, 2004, until December 2004, Ankrum had little if any contact with respondent despite numerous attempts to communicate with him.  Ankrum ultimately retained new counsel, and on April 14, 2005, the probate judge granted relief from the 1993 paternity judgment.

{¶ 9}  The board found that in representing Ankrum, respondent had violated DR 1-102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice), 6-101(A)(3) (prohibiting the neglect of an entrusted legal matter), and 9-102(B)(4) (requiring a lawyer to promptly repay funds that the client is entitled to receive).

{¶ 10} As to Count II, evidence established that Hutchison retained respondent in February 2004 to defend him against a contempt charge for failing to pay child support and in a separate child support claim before the Perry County Juvenile Court.  Hutchinson paid respondent $1,000.

{¶ 11} On March 9, 2004, a juvenile court magistrate found Hutchison in contempt, ordering a fine and a jail sentence but suspending both providing that Hutchinson paid a monthly amount toward child support arrearages.  Respondent did not file objections, despite Hutchinson's request, and a juvenile court judge adopted the magistrate's findings.  On April 8, 2004, the magistrate issued her findings in the child support matter and ordered Hutchinson to pay approximately $635 in child support per month.  Respondent filed no objections, again contrary to his client's wishes, and the juvenile court judge adopted the child support order.

**{¶ 12}** After these orders were issued, Hutchinson repeatedly tried to contact respondent, but respondent never returned his calls.

**{¶ 13}** The board found that in representing Hutchinson, respondent had violated DR 1-102(A)(5), 6-101(A)(3), and 9-102(B)(4).

**{¶ 14}** As to Count III, the board found that respondent had violated Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in a disciplinary investigation). Evidence in support of this violation established that respondent received by certified mail a letter of inquiry relating to Ankrum's grievance on January 26, 2005. Respondent did not reply to the letter. Relator sent a second letter of inquiry by certified mail on February 22, 2005, to the same office address, but it was returned unclaimed.

**{¶ 15}** On February 17, 2005, and March 15, 2005, relator sent letters of inquiry relating to Hutchinson's grievance to respondent by certified mail. These letters were also sent to the office address at which respondent had signed the earlier certified receipt. Both letters were returned unclaimed.

Recommended Sanction

**{¶ 16}** In recommending a sanction for respondent's misconduct, the board weighed the aggravating and mitigating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.")

**{¶ 17}** As an aggravating factor under BCGD Proc.Reg. 10(B)(1)(a), the board acknowledged respondent's significant record of prior professional sanctions, which included not only the indefinite suspension issued on November 24, 2004, but a brief suspension beginning on September 24, 1998, for respondent's default on a child support order. See *In re Griffith* (1998), 83 Ohio St.3d 1440, 700 N.E.2d 30. The board found that respondent's misconduct constituted a pattern of misconduct and multiple offenses, aggravating factors

under BCGD Proc.Reg. 10(B)(1)(c) and (d). The board further found in aggravation that respondent had failed to cooperate in the disciplinary process, had harmed his clients' legal interests in addition to giving his clients little or nothing for their money, and had failed to make restitution. See BCGD Proc.Reg. 10(B)(1)(e), (h), and (i). The board found no evidence of mitigating factors.

{¶ 18} Relator advocated disbarment. The master commissioner agreed that disbarment was appropriate, and the board adopted that recommendation.

### Review

{¶ 19} We agree that respondent violated DR 1-102(A)(5), 6-101(A)(3), and 9-102(B)(4) and Gov.Bar R. V(4)(G), as found by the board. We also agree with the recommendation to disbar.

{¶ 20} As we said in *Cincinnati Bar Assn. v. Weaver,* 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 16: "Taking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client. *Disciplinary Counsel v. Sigall* (1984), 14 Ohio St.3d 15, 17, 14 OBR 320, 470 N.E.2d 886. The presumptive disciplinary measure for such acts of misappropriation is disbarment. *Disciplinary Counsel v. France,* 97 Ohio St.3d 240, 2002-Ohio-5945, 778 N.E.2d 573, ¶ 11." Accord *Butler Cty. Bar Assn. v. Cornett,* 109 Ohio St.3d 347, 2006-Ohio-2575, 847 N.E.2d 1200. We see no reason why that presumption should not be followed in this case.

{¶ 21} Respondent is therefore permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

_____